SHAPLEIGH v. CHESTER ELECTRIC LIGHT & POWER CO. et al.

(Circuit Court, E. D. Pennsylvania. May 29, 1894.)

No. 21.

PATENTS—INTERPRETATION—INFRINGEMENT.

The Shapleigh patent No. 433,187, for a "safety cut-off" for electrical apparatus, construed, and *held* not infringed.

This was a bill by M. S. Shapleigh against the Chester Electric Light & Power Company and others, for infringement of a patent. Heard on the pleadings and proofs.

Mark W. Collet, John R. Bennett, and Randall Morgan, for complainant.

Strawbridge & Taylor, for respondents.

DALLAS, Circuit Judge. This suit is brought by Marshall S. Shapleigh upon letters patent No. 433,187, dated July 29, 1890, granted to him for a "safety cut-off." The claims which he alleges the defendants have infringed are as follows:

"(1) The combination of a pair of spring clamps, a fuse placed between the jaws of said clamps and automatically clamped thereby, and terminals provided with lateral supports operating to compress the jaws of said clamps externally, substantially as described.

"(2) The combination of a pair of spring clamps insulated from each other except through the fuse, terminals placed on a suitable insulating block, and provided with lateral supports, between which the jaws of said clamps pass, and are compressed externally, and a fuse automatically held by and between the jaws of said clamps, substantially as described."

"(4) The combination of a pair of spring contact clamps, made of an elastic conducting material, and provided with jaws, by and between which the fuse is placed and automatically clamped, with a pair of terminals placed on a suitable insulating block, and provided with lateral supports operating to compress the jaws of the clamping contacts externally, substantially as described."

"(7) The combination of a block provided with two terminals, supports of conducting material electrically connected to said terminals, and in permanent mechanical connection therewith, a pair of spring clamps provided with jaws connected by an insulating piece, and a fuse, the whole being arranged so that the jaws are pressed upon the fuse automatically, and complete the circuit between the terminals."

"(9) The combination of a pair of spring clamps insulated from each other, and provided with jaws, a fuse automatically held by and between the jaws of said clamps, and terminals provided with lateral supports sufficiently close to compress the jaws, substantially as described."

Safety cut-offs were not new with this inventor. Before the patent in suit was applied for, they were well known, and, as in the complainant's device, their principal constituent was a strip of metal more fusible than the conducting wire employed throughout the system generally. These more fusible pieces are themselves capable of conducting, without fusing, the current intended to be transmitted, and, being interposed as a part of the continuous conductor, they simply form, so long as the normal current is not exceeded, a small section of any circuit to which they are applied; but if and when, from any cause, the ordinary current is materially

increased, they, by fusing, break the circuit, and thus operate to secure immunity from the danger which otherwise would arise from the passage of the abnormal current beyond the point of their insertion. In addition to the fusible strip, all automatic cut-offs comprise certain other requisite features in common; but it is not necessary to describe them.

Each of the claims involved in this case is for a combination of physical parts constituting an integral organism, and, of each of them, terminals provided with lateral supports are an essential element. As to whether the defendants' arrangement embodies this element, the experts broadly differ. Having considered their testimony with care, and having also closely examined and compared the respective devices for myself, I have reached the conclusion that that of the defendants is, at least as to the element especially mentioned, materially different in structure from that of the plaintiff; and, furthermore, I am convinced of the pertinency and soundness of the point made by the learned counsel for the defendants:

"That each terminal of each pair of terminals of the Shapleigh patent is an electrical device embodying lateral supports, and must necessarily so be, whereas but one terminal, at most, of each pair of defendants' terminals, is or need be an electrical terminal embodying lateral supports, and that, therefore, * * * defendants' device does not infringe the specific combination of the claims of complainant's patent."

Upon the ground that infringement of the plaintiff's patent by the defendants has not been shown, the bill is dismissed, with costs.